CAMPBELL, Chief Judge.
Appellant, plaintiff below, Seres Registe, challenges the final summary judgment entered against him in his negligence action against appellee, defendant below, Joe Porter, doing business as Joe Porter’s Junkyard. Appellant’s cause of action for personal injuries arose out of a dog-bite incident which occurred at appellee’s junkyard. We affirm.
Appellant is a resident alien from Port-au-Prince, Haiti, who speaks and reads only Creole French. On May 16, 1984, appellant, accompanied by two Haitian friends, went to appellee’s junkyard looking for parts for his broken down automobile. Appellant’s two friends stayed in their vehicle outside the junkyard while appellant went into the junkyard through an open gate. The junkyard is enclosed by a wooden fence with the gate at the entrance. While appellant and his friends, through deposition testimony, stated they did not see any “Bad Dog” warning signs, neither of them testified that there were no signs posted. Appellee, on the other hand, established through five eyewitnesses who were present at the time of the incident that there were conspicuously-posted, easily readable signs bearing the English language legend “Beware of the Dog.” The deputy sheriff called to the scene to investigate the incident stated in his investigative report and testified in his deposition to the existence of the visible, conspicuous signs. A picture of the gate and the signs was submitted in support of appellee’s motion *215 for summary judgment and was authenticated by the five eyewitnesses. The evidence was clearly and irrefutably established that there were four “Bad Dog” signs posted surrounding the entrance gate ’to appellee’s junkyard, two signs on the outside and two signs on the inside. In addition, one of the witnesses to the incident testified that when she observed appellant about to enter the gate, she shouted to him (in English), “Don’t go in, he has dogs in there; don’t you see the signs?” Appellant ignored her verbal warning.
The affirmative unrefuted testimony of appellee’s witnesses is sufficient to establish that there was not a material issue as to the existence of the visible, conspicuous signs surrounding appellee’s junkyard. The fact that the testimony of appellant and his friends indicates that they did not see or understand the signs is not sufficient to create a material issue of fact as to the existence of the signs. Holl v. Talcott, 191 So.2d 40 (Fla.1966); Rattet v. Dual Security Systems, Inc., 373 So.2d 948 (Fla. 3d DCA 1979). That leads us to the crucial issue which we must decide and which apparently has not previously been decided by Florida courts, though Flick v. Malino, 374 So.2d 89 (Fla. 5th DCA 1979) is relied upon by appellánt as being factually analogous and, therefore, persuasive. We do not find Flick to be analogous enough to be persuasive, but if so, our resolution of this case is in conflict.
The issue we are called upon to decide is whether a conspicuously-posted, easily readable, English language “Bad Dog” sign, posted pursuant to section 767.04, Florida Statutes (1983), is ineffective to protect the owner of the posted premises from liability for a dog-bite because the dog-bite victim was unable to read or write English. (The recent amendment to the Florida Constitution adopting English as the official language in the state was not in effect at the time of this incident.) We hold that such a sign is effective to protect the property owner from liability regardless of the victim’s failure to understand the warning solely because of an inability to read or write English.
Our supreme court has several times analyzed the legislative intent in enacting section 767.04. In Belcher Yacht, Inc. v. Stickney, 450 So.2d 1111 (Fla.1984) and Carroll v. Moxley, 241 So.2d 681 (Fla.1970), the supreme court clearly held that section 767.04 has superseded the common law in those situations covered by the statutes. Moreover, the court in Belcher emphasized that the legislature had not revisited section 767.04 by way of amendment or otherwise since Carroll and Donner v. Arkwright-Boston Manufacturers Mutual Insurance Co., 358 So.2d 21 (Fla.1978), were decided. As those cases note, section 767.04 imposes absolute liability upon a dog owner for a dog-bite when the dog-bite victim is in a public place or lawfully on or in a private place except when the dog is carelessly or mischievously provoked or when the owner has displayed in a prominent place on the premises a sign easily readable including the words “Bad Dog” (or equivalent wording). See Romfh v. Berman, 56 So.2d 127 (Fla.1951).
The language of the statute that led the court in Flick to its conclusion that a dog owner cannot escape liability even though easily readable signs are posted when the victim is a young child who cannot read are the words “easily readable.” If those words are interpreted to mean that in order for a sign to effectively protect a dog owner from liability every potential dog-bite victim must be able to read and understand the sign, then in our opinion the purpose of the statute as intended by the legislature has been virtually negated. On the one hand, the statute imposes absolute liability on the dog owner. On the other hand, the statute provides two exceptions to that absolute liability. In our opinion, for the statute to be effective, the exceptions should create as absolute a shield from liability as the absence of the exceptions creates absolute liability. If a dog owner must post a sign that can be read and understood by every potential victim, regardless of their degree of intelligence or their ability to comprehend the language of the sign, then the dog owner’s protection from absolute liability will be severely eroded. If that were the case, even though Belcher and Carroll have held that the common law has been completely superseded by section 767.04, it would force a re *216 turn to the common law to determine the respective rights and duties of the parties because no dog owner could be expected to post a sign in the particular language of every conceivable victim. We do not believe that to have been the legislative intent.
The fifth district in Flick so interpreted section 767.04 in the case of a three-year-old child. While we might be sympathetic to protecting children of such a tender age under the circumstances of that case, we would not extend such a conclusion to the circumstances of this case or to cases with circumstances similar to this case. The court in Flick relied upon language of the supreme court in Carroll which we determine to have been dicta. That language is as follows:
It must be noted, however, that the express requirement of the statute is that the “Bad Dog” sign be posted “in a prominent place” and be “easily readable.” The purpose of these requirements is to make certain that before a dog owner will be relieved of liability, the attempt to give notice that a bad dog is on the premises must be genuine, effective and bona fide. In every case, the factual determination must be made whether the “Bad Dog” sign as posted is in a prominent place and easily readable, so as to give actual notice of the risk of bite to the victim. The sufficiency of this notice should be determined by the circumstances of each case. While it is reasonable to conclude that the Legislature could enact a statute shielding a dog owner from liability where notice of the bad dog risk is prominently given by a sign easily readable, it would be unreasonable to conclude that a dog owner should be shielded from liability where a victim was trapped in circumstances where the sign was not both prominently displayed and easily readable. Not every sign, even if seen, is sufficient to put a potential victim on notice of the risk he assumes by being present on the premises.
241 So.2d at 683 (emphasis supplied).
The supreme court in Belcher again alludes to an actual notice requirement when it says:
In light of Stickney’s admission that he had seen and understood the “BEWARE OF DOG” sign, the district court held that the trial court correctly determined that there was no issue of fact on the statutory claim and a directed verdict on that claim was appropriate. We agree with the district court’s holding on this issue....
450 So.2d at 1112 (emphasis supplied). While we acknowledge those supreme court obiter dictum references to a need for actual notice to a dog-bite victim by means of the posted signs required by section 767.04, we conclude that in no case has the supreme court actually imposed such a requirement. Therefore, we conclude that we are not, by our decision in this case, in contravention of any rule imposed by our supreme court.
Perhaps we in the legal profession ought always to go first to a good, accepted English language dictionary when we are concerned about the meaning the legislature intended when using a word common to the English language. Houghton Mifflin Company, The American Heritage Dictionary of the English Language (New College Edition 1979) states the primary or preferred definition of “readable” as: “Capable of being read easily; legible.”
We conclude, therefore, that the legislature in enacting section 767.04 imposing a requirement for a sign “easily readable,” was clearly intending a sign that was “legible” and “capable of being read.” Furthermore, we also conclude that this requirement is for a sign that is capable of being read and is not a requirement that any possible victim of a dog-bite be “capable of reading” the sign.
We affirm the summary judgment for appellee.
SCHEB and LEHAN, JJ., concur.