DIAMANTIS, Judge.
Patricia A. Huie, an employee of Ormond Pet and Kennel Club, appeals the trial court’s final summary judgment rendered in favor of Kurt Wipperfurth, the owner of a dog which bit Huie while it was boarded at the kennel for obedience training. The trial court concluded that the “repairman” or independent contractor exception to the dangerous instrumentality doctrine applied to bar Huie’s recovery. Because of applicable Florida Supreme Court precedent, we reluctantly conclude that the trial court erred in applying this common-law defense to an action brought under section 767.04, Florida Statutes (1989); thus, we reverse and remand for further proceedings consistent with this opinion.
The facts are not in dispute. Huie was employed by Gary Besset at the Ormond Pet and Kennel Club. Huie’s duties included bathing, grooming, feeding, exercising, and medicating the animals at the kennel. Wip-perfurth’s dog, a 60- to 70-pound Doberman pinscher named “Duke,” was boarded at the kennel in January 1990 for the purpose of receiving obedience training from Besset. While - on duty, Huie was responsible for feeding, walking, and cleaning Duke. On the afternoon of January 30, 1990, while Huie was walking Duke, Duke jumped on Huie’s chest and arms. Huie said “no, off,” and she stepped back. Duke then dropped to the ground. When Huie turned to leave, however, Duke jumped on her back and bit her several times on the back and on the right arm and shoulder. To Huie’s knowledge, Duke never before had behaved in a hostile or otherwise unusual manner.
We agree with Huie’s contention that section 767.04, Florida Statutes (1989), provided persons bitten by dogs with an exclusive statutory civil remedy against dog owners and that the statute superseded all defenses not specifically enumerated therein. In January 1990, when Huie’s injury occurred, section 767.04 provided in pertinent part:
The owners of any dog which shall bite any person, while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of such dogs, shall be liable for such damages as may be suffered by persons bitten, regardless of the former viciousness of such dog or the owners’ knowledge of such viciousness.... [Pjrovided, however, no owner of any dog shall be liable for any damages to any person or his property when such person shall mischievously or carelessly provoke or aggravate the dog inflicting such damage; nor shall any such owner be so liable if at the time of any such injury he had displayed in a prominent place on his premises a sign easily readable including the words “Bad Dog.”
§ 767.04, Fla.Stat. (1989).
In Carroll v. Moxley, 241 So.2d 681, 682 (Fla.1970), the supreme court concluded that section 767.04 superseded the common law in those situations covered by the statute. Accordingly, the court held that a plaintiff did not have a cause of action against a dog *1111 owner under both the statute and the common law. In Donner v. Arkwright-Boston Manufacturers Mutual Insurance Co., 358 So.2d 21 (Fla.1978), the supreme court was faced with the corollary issue of whether common-law defenses were superseded by the statutory defenses of section 767.04. In answering this question in the affirmative, the court stated:
Consistent with our reasoning in Moxley, ... we can only conclude that in making the dog owner the insurer against damage done by his dog, thereby supplanting the common law negligence-type action, the legislature intended to shoulder him with the burden of his animal’s acts except in the specific instances articulated in the enactment — where the dog is provoked or aggravated or the victim is specifically warned by a sign.
Donner, 358 So.2d at 24. Accordingly, the court held that the trial court erred in giving the jury a separate instruction on the defense of assumption of risk because the court should have limited its instructions to the defenses expressed in the statute. Id at 23. The court overruled earlier decisions of the District Courts of Appeal to the extent that they expressed or implied “the existence of a separate defense predicated upon assumption of risk.” Id. at 26.
Since deciding Moxley and Donner, the supreme court consistently has reaffirmed the principle that chapter 767 supersedes the common law in actions against dog owners for injuries caused by their dogs. In Reed v. Bowen, 512 So.2d 198, 200 (Fla.1987), the court held that section 767.04 modified the common-law rule that a child under six was legally incapable of negligence. Thus, even if the dog-bite victim was under six years of age, the defendant could assert the statutory defense of provocation. Accord Porter v. Allstate Insurance Co., 497 So.2d 927, 930 (Fla. 5th DCA 1986). More recently, in Kilpatrick v. Sklar, 548 So.2d 215, 218 (Fla.1989), the supreme court held that the common-law Fireman’s Rule was not a defense to actions brought under sections 767.01[1] and 767.04, Florida Statutes (1981).
In applying the independent contractor exception to bar recovery in the present case, the trial court relied upon the fourth district’s decision in Wendland v. Akers, 356 So.2d 368 (Fla. 4th DCA 1978), cert. denied, 378 So.2d 342 (Fla.1979).[2] In Wendland, the plaintiff, a veterinarian’s assistant, was bitten by a large German shepherd while the plaintiff assisted her employer in extracting blood from the dog’s leg. At the time the plaintiff was bitten, she had her arms around the dog’s neck to immobilize its front leg for insertion of a needle while the veterinarian pressed the dog’s head down. The court held that the owners of the dog were not liable to the plaintiff because the plaintiff and the veterinarian provoked the dog as a matter of law and, alternatively, because the veterinarian was an independent contractor who was in complete control of the “inherently dangerous work” of treating and handling the dog. Id. at 371. In relieving the owners of liability for injuries caused by the dog absent a showing of active negligence by the owners, the court concluded that “[Ijogic and reason compel ... that [the independent contractor] exception should be applied here.” Id.
If we were not bound by supreme court precedent, we would follow Wendland under the limited circumstances of this case. We agree that, absent active negligence by a dog owner, the owner should be relieved of liability for injuries caused by his dog where the owner has contracted with a professional, such as a veterinarian or kennel owner, for the care, custody, and control of the dog and, while in the professional’s custody, the dog bites an employee of the professional. Thus, absent evidence of Wipperfurth’s negligence, we do not believe that Huie should be permitted to maintain the present action against Wipperfurth for injuries which Huie sustained while Duke was in the care, custody, *1112 and control of Huie’s employer, the kennel. Nevertheless, the Florida Supreme Court’s precedent prior to and subsequent to Wend-land has made it clear that, until the legislature mandates otherwise, section 767.04 supersedes the common law and provides both the exclusive remedy and defenses in a dog-bite action.[3] We, therefore, reluctantly conclude that the independent contractor defense recognized in Wendland is no longer viable in an action brought against a dog owner under section 767.04.
We also have considered whether we can uphold the trial court’s order on the theory that, pursuant to its contract with the actual owner, the kennel became an owner of Duke when the kennel undertook Duke’s care, custody, and control. Again, however, because of applicable supreme court precedent, we conclude that the kennel could not be considered a dog owner under section 767.04.
Section 767.04 does not define the term “owner”. In Belcher Yacht, Inc. v. Stickney, 450 So.2d 1111 (Fla.1984), however, the supreme court addressed the question of whether section 767.04 pertains only to the actual owner of a dog as opposed to a custodian or keeper of the dog. The court stated:
[N]ote that section 767.04 pertains only to the owner. It is silent as to the custodian or keeper of a dog who is not the owner.[2]
Belcher Yacht, 450 So.2d at 1112. In that case, the court held that only the actual owner of the dog faced liability under section 767.04 when the owner’s guard dog bit a third party upon the owner’s premises. The court further held that the security guard who had custody and control of the guard dog when it bit the third party was not liable under the statute although the security guard might be found liable under common-law negligence principles.
Prior to Belcher Yacht, district courts similarly restricted the meaning of “owner” under chapter 767. In Flick v. Malino, 356 So.2d 904, 905 (Fla. 1st DCA 1978), the court concluded that the wife of the now deceased dog owner was not an “owner” under section 767.04 even though the dog resided at the residence of the dog owner and. his wife. In Smith v. Allison, 332 So.2d 631, 634 (Fla. 3d DCA 1976), the court stated that, “[b]ecause of the severe, potential consequences inherent in [section 767.01],[4] there is a clear burden on the plaintiff to show the defendant’s actual ownership of the dog in question, and not merely to show possession or custody.”
We are aware of cases from other jurisdictions holding that the definition of “owner” includes the veterinarian or kennel owner who undertakes care, custody, and control of a dog. See Tschida v. Berdusco, 462 N.W.2d 410 (Minn.Ct.App.1990) (dog owners not liable under Minnesota dog-bite statute when their dog bit veterinarian’s employee because both actual owners and veterinarian were statutory owners); Wilcoxen v. Paige, 174 Ill.App.3d 541, 124 Ill.Dec. 213, 528 N.E.2d 1104 (Ct.1988) (dog owner not liable under Illinois statute when his dog bit owner/operator of dog boarding and grooming business because both actual owner and business owner were statutory owners of dog). Neither Tschida[5] nor Wilcoxen are apposite to our decision, however, because both the Minnesota and Illinois dog-bite statutes define “owner” to include both the actual dog owner and any person who acts as custodian or keeper of the dog.
In this regard, we note that the Minnesota and Illinois definitions of owner are comparable to the statutory definition of owner found in the “dangerous dog” act which the Florida legislature enacted in 1990. Ch. 90-180, *1113 Laws of Fla. (subsequently codified at §§ 767.10-767.15, Fla.Stat. (Supp.1990)). The “dangerous dog” act’s definition of owner includes “any person, firm, corporation, or organization possessing, harboring, keeping, or having control or custody of an animal.” § 767.11(7), Fla.Stat. (Supp.1990). The trial court, however, concluded that this definition did not apply to the present case, and we agree. This definition of owner did not take effect until October 1, 1990, approximately eight months after Huie was injured. More importantly, by its terms, section 767.11 states only that its definitions apply to “this act,” as opposed to this “chapter.” § 767.11, Fla.Stat. (Supp.1990). Further, we note that section 767.15 provides that “[njothing in this act shall supersede chapter 767, Florida Statutes 1989.” § 767.15, Fla.Stat. (Supp.1990).
In accordance with the foregoing authorities, we reverse the final summary judgment entered by the trial court and remand this cause for further proceedings consistent with this opinion; however, because this case involves a matter of great public importance,[6] and because we would follow Wendlcmd if not for precedent of the Florida Supreme Court, we certify the following questions to the supreme court:
1. IS THE INDEPENDENT CONTRACTOR EXCEPTION TO THE DANGEROUS INSTRUMENTALITY DOCTRINE AVAILABLE TO A DOG OWNER AS A DEFENSE TO AN ACTION UNDER SECTION 767.04, FLORIDA STATUTES?
2. UNDER SECTION 767.04, DOES THE TERM “OWNER” INCLUDE A KENNEL OWNER OR VETERINARIAN WHO UNDERTAKES THE CARE, CUSTODY, AND CONTROL OF A DOG PURSUANT TO AN AGREEMENT WITH THE DOG’S ACTUAL OWNER? REVERSED and REMANDED.
COBB and PETERSON, JJ., concur.

. Section 767.01 provides, as it did in 1981, that: Owners of dogs shall be liable for any damage done by their dogs to sheep or other domestic animals or livestock, or to persons. § 767.01, Fla.Stat. (1993).

. The supreme court decided Donner on April 8, 1978. The fourth district decided Wendland on March 14, 1978, and it denied rehearing on April 7, 1978.

 Compare with section 767.05, Florida Statutes (1979), which specifically refers to "an owner or keeper of any dog

.We note that, effective October 1, 1993, the legislature amended section 767.04 by replacing the defense of provocation with one of comparative negligence and by providing that section 767.04 is "in addition to and cumulative with any other remedy provided by statute or common law." § 767.04, Fla.Stat. (1993). Because the 1993 version does not apply in this case, we need not address the effect of these amendments on the future availability of common-law defenses under the statute.

. See supra note 1.

. The Minnesota court cited Wendland v. Akers, 356 So.2d 368 (Fla. 4th DCA 1978), cert. denied, 378 So.2d 342 (Fla.1979), but did not discuss later supreme court opinions which apparently overruled Wendland.

. Although the legislature amended section 767.04 in 1993, this section still fails to define "owner.”